UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
GARY LA BARBERA, et al.,

Plaintiffs,

- against -

CAB II Enterprises, INC.,

Defendant.
---------------------------------------------------X

**REPORT AND
RECOMMENDATION**

08 CV 3648 (FB)(CLP)

On September 8, 2008, plaintiffs, Trustees of Local 282 of the International Brotherhood

of Teamsters Welfare, Pension, Annuity, Job Training and Vacation/Sick Leave Trust Funds (the

"Funds"), filed this action against defendant Cab II Enterprises, Inc. ("Cab II"), pursuant to the

Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq.

("ERISA"), and the Labor Management Relations Act of 1947, 29 U.S.C. § 185 ("LMRA"),

seeking to recover delinquent contributions owed to the Funds. Plaintiffs also seek a permanent

injunction enjoining defendant from future violations and breaches under the applicable

Collective Bargaining Agreement (the "CBA") for so long as defendant remains obligated.

Despite proper service of the Summons and Complaint, defendant failed to appear in the

action and on October 6, 2008, plaintiffs moved for default, which was entered by the Clerk of

Court on October 10, 2008. By Order dated January 8, 2009, the Honorable Frederic Block,

United States District Judge, referred the matter to the undersigned to determine whether entry of

judgment is appropriate, and to conduct an inquest on damages.

## FACTUAL BACKGROUND

According to the Complaint, plaintiffs are trustees of multi-employer benefit trusts that provide fringe benefits to employees performing services within the jurisdiction of Local 282 of the International Brotherhood of Teamsters (the "Union"). (Compl.[1] ¶¶ 1-2; Schreiber Aff.[2] ¶¶ 7-8). Defendant is a corporation located in Staten Island, New York and a signatory to the CBA with the Union. (Compl. ¶ 6; Schreiber Aff. ¶ 9; Ex. B). Pursuant to the CBA and Declaration of Trust ("Trust Agreement") as amended, defendant is required to pay fringe benefit contributions to the Funds for work performed by the individual employees of defendant based on rate schedules set forth in the CBA. (Compl. ¶ 8; Schreiber Aff. ¶ 8). Contributions are due seven days following the end of the reporting period. (Schreiber Aff. ¶¶ 17, 35).

In his affirmation and supplemental affirmation, plaintiffs' counsel determined that defendant owed the Funds unpaid fringe benefit contributions for the weekly reporting period ending October 17, 2008. (Schreiber Supp. Aff.[3] ¶ 13). Additionally, it was determined that the defendant owed delinquency charges, including liquidated damages and interest, for late payments made for the periods of May 26-30, 2008, June 16-20, 2008, June 23-27, 2008 and October 13-17, 2008. (Schreiber Aff. ¶¶ 16-18; Schreiber Supp. Aff. ¶¶ 2, 14). Additionally, plaintiffs claim they are owed any additional contributions or delinquency charges that might

---

[1]Citations to "Compl." refer to the Complaint, filed on September 8, 2008.

[2]Citations to "Schreiber Aff." refer to the Affirmation of Avram H. Schreiber, Esq., submitted in support of default judgment and permanent injunction, dated February 5, 2008.

[3]Citations to "Schreiber Supp. Aff." refer to the Supplemental Affirmation of Avram H. Schreiber, Esq., submitted in support of default judgment and permanent injunction, dated February 9, 2009.

become due and owing prior to trial and judgment. (Compl. ¶ 21). Plaintiffs also request a

permanent injunction enjoining Cab II from violating the terms of this and successive CBAs and

Trust Agreements. (Id. ¶ 26(e)).

On September 8, 2008, plaintiffs filed this action seeking an award of the delinquent

contributions, plus interest, liquidated damages, and attorneys' fees, as authorized by 29 U.S.C. §

1132. The Summons and Complaint were served on defendant through service upon the New

York Secretary of State on September 12, 2008. (Schreiber Aff. ¶ 3; Ex. A).

Following service, defendant failed to answer or otherwise respond to the Complaint, and

a default was entered on October 6, 2008. On January 8, 2009, plaintiffs' motion for default

judgment and a permanent injunction was referred to the undersigned to prepare a Report and

Recommendation on the issue of damages.

This Court issued an Order, dated January 9, 2008, directing the parties to submit papers

in support of their damages calculations by February 9, 2008. In response to that Order,

plaintiffs submitted a Supplemental Affirmation in Support of Plaintiffs' Claim for Damages,

dated February 5, 2008, in which counsel for the Funds represents that since the time the initial

Complaint was filed, defendant has submitted several remittance reports which had previously

been missing, and which led to a reduction in the amount of damages plaintiffs are seeking

because during certain of these periods no work was performed and therefore no contributions

were owed. (Schreiber Supp. Aff. ¶¶ 4, 6; Ex. A; Ex. B).[4] As a result, plaintiffs now seek a total

---

[4]In his original affirmation, Mr. Schreiber indicated that plaintiffs had not received any
remittance reports for the period of the week ending July 4, 2008 and for the periods of all weeks
ending between July 18, 2008 and August 29, 2008. (Schreiber Aff. ¶¶ 19-28). As a result,
plaintiffs assumed a significant number of hours had been worked in each of those weeks and
estimated damages based on this assumption. (Schreiber Aff. ¶¶ 20-24). In the Schreiber

of $14,486.04 in delinquent contributions, interest, liquidated damages, and attorneys' fees. (Schreiber Supp. Aff. ¶¶ 2, 4-5). Although the Court received this supplemental submission from the plaintiffs, no submissions have been received from defendant, nor has defendant contacted the Court to request additional time.

## DISCUSSION

Having reviewed the prior proceedings in this case, the Court respectfully recommends that judgment be entered in favor of plaintiffs. Plaintiffs have submitted copies of the relevant portions of the CBA and the Trust Agreement in effect during this period that by their terms required defendant to make certain payments on a weekly basis. (Schreiber Aff. ¶¶ 9, 11, 12; Ex. B; Ex. C). The Trust Agreement specifically provides that if the defendant fails to make the payments of contributions as required, defendant is obligated to pay interest, attorneys' fees, auditor's fees and liquidated damages in addition to the amount owed in contributions. (Id. ¶ 12).

Defendant has not responded to plaintiffs' motion for entry of judgment or to this Court's Order requiring the submission of papers in connection with the damages request. Thus, there is nothing before this Court that disputes the veracity of plaintiffs' claim that defendant has failed to comply with the terms of the CBA and Trust Agreement.

---

Supplemental Affirmation, however, Mr. Schreiber indicates that the reports that plaintiffs have since received show that zero hours were worked in those weeks, as opposed to the amount of hours assumed in his original affirmation. (Schreiber Supp. Aff. ¶ 6). Additionally, in his Supplemental Affirmation, Mr. Schreiber indicates that for the periods of the weeks ending between September 7, 2008 and October 12, 2008, and between October 20, 2008 and December 31, 2008, remittance reports were submitted to plaintiffs which indicate that zero hours were worked. (Schreiber Supp. Aff. Ex. B; Ex. C).

Moreover, it is beyond dispute that defendant is in default. It has not responded to the

Complaint or the motion for default judgment. See Hirsch v. Innovation Int'l, Inc., No. 91 CV

4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992) (holding that "[the defendant's] default

is crystal clear - - it does not even oppose this motion"). Additionally, the defendant company

has not obtained counsel. Such a failure to obtain counsel constitutes a failure to defend because

corporations cannot proceed in federal court pro se. See Shapiro, Bernstein & Co. v. Cont'l

Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (noting the well settled law that a

corporation cannot appear without an attorney); see also Jones v. Niagara Frontier Transp. Auth.,

722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial"

entities, to appear through counsel only). Further, the amount of money involved in this case is

not great, unlike a case in which there could potentially be millions of dollars involved. See id.

(deciding that default judgment would not enter because plaintiffs' damages request ran well into

the millions of dollars, and giving defendant an opportunity to contest the default judgment).

Here, defendant has failed to respond to plaintiffs' motion for entry of judgment and a

permanent injunction, as well as to the Order from this Court relating to the calculation of

damages. Given the numerous opportunities afforded defendant and its apparent lack of interest

in participating in these proceedings, this Court finds no compelling reason to delay further.

Accordingly, it is respectfully recommended that judgment in the amount of $17,159.71,[5]

---

[5]In plaintiffs' counsel's supplemental affirmation, the damages requested only totaled
$14,486.89. Though the additional interest that has accrued since the initial submission explains
some part of this discrepancy, it appears that the bulk of this inconsistency is accounted for by
the fact that liquidated damages and interest incurred by late payment was not taken into account
in the plaintiffs' counsel's supplemental affirmation for the weeks ending on May 30, 2008, June
20, 2008, and June 27, 2008. Such payments represent an amount totaling approximately
$2,750.00.

be entered in favor of plaintiffs. It is further recommended, however, that the plaintiffs' request

for a permanent injunction be denied at this time.

A. Default Judgment Damages

It is well-settled that the burden is on the plaintiff to establish its entitlement to recovery.

See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992),

cert. denied, 506 U.S. 1080 (1993); Clague v. Bednarski, 105 F.R.D. 552 (E.D.N.Y. 1985).

When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded

allegations in the complaint pertaining to liability. See Greyhound Exhibitgroup, Inc. v. E.L.U.L.

Realty Corp., 973 F.2d at 158; Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981);

Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992); Deshmukh v. Cook,

630 F. Supp. 956, 959 (S.D.N.Y. 1986). However, the plaintiff must still prove damages in an

evidentiary proceeding at which the defendant has the opportunity to contest the claimed

damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158. "'While

a default judgment constitutes an admission of liability, the quantum of damages remains to be

established by proof unless the amount is liquidated or susceptible of mathematical

computation.'" Levesque v. Kelly Communications, Inc., No. 91 CV 7045, 1993 WL 22113, at

*4 (S.D.N.Y. Jan. 25, 1993) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)).

While "the court must ensure that there is a basis for the damages specified in a default

judgment, it may, but need not, make the determination through a hearing." Fustok v.

Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988), aff'd, 873 F.2d 38 (2d Cir.

1989). Here, where the plaintiffs have filed reasonably detailed affidavits, declarations and

exhibits pertaining to the damages incurred, and where the defendant has failed to respond to either the Order of the Court or plaintiffs' motion, the Court can make an informed recommendation regarding damages without an evidentiary hearing.

## B. Delinquent Contributions

In an ERISA action brought by a fiduciary for or on behalf of a plan to enforce rights under Section 1145, the statute specifies the damages to be awarded when judgment is entered in favor of the plan. See 29 U.S.C. § 1132(g)(2). The statute provides for an award of:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of--
> (i) interest on the unpaid contributions, or
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2); see also Iron Workers Dist. Council of W.N.Y. & Vincinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1506-1507 (2d Cir. 1995).

The CBA appears requires defendant to submit weekly reports and remit all contributions within seven days of the end of the weekly reporting period. (Schreiber Aff. ¶ 33-35). The Trust Agreement provides that if defendant is in default for five working days after this deadline,

defendant shall pay all outstanding contributions plus interest, fees and liquidated damages. (Schreiber Aff. ¶ 12; Ex. B; Ex. C).

Section 1145 of ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Here, plaintiffs have alleged that Cab II, as an employer, was obligated under the CBA with the Union to make contributions to the Funds, and that defendant has failed to comply with its contractual obligations by failing to remit payment of fringe benefit contributions for the week-long period ending October 17, 2008. (Schreiber Supp. Aff. ¶¶ 2, 4).

Plaintiffs have provided the Court with a copy of the CBA to which defendant was a signatory. (Schreiber Aff. Ex. B). Having reviewed the CBA, the Trust Agreement, and the other papers submitted in support of plaintiffs' request, the Court finds that the following amounts are owed by defendant in accordance with the CBA and ERISA:

Defendant failed to submit a remittance report or payment for the week-long period ending October 17, 2008. (Schreiber Aff. ¶ 8). Under the Trust Agreement, where an employer fails to file a report, contributions may be computed by adding 10% to the number of hours worked for the week in which the largest number of hours were reported among the prior twelve positive reports submitted by the employer. (Schreiber Aff. ¶ 21; Ex. C, Art. IX, § 1(e)).

In this case, the hours reported for the week of June 27, 2008 represent the largest number of hours reported by the employer in the twelve periods for which reports were submitted prior to

October 17, 2008.[6] (Schreiber Aff. Ex. G). The total reported hours for June 27, 2008 is 232

hours. (Schreiber Supp. Aff. ¶ 11). This amount, when increased by 10% as provided for in the

Trust Agreement, results in a total of 252.2 hours for which contributions are owed to each of the

Welfare, Pension, Annuity, Job Training and Vacation and Sick Leave Funds for the week of

October 17, 2008. (Id.) When multiplied by the applicable contribution rate in effect for each

Fund, the principal amounts of contributions owed equals $7,452.48. The calculations are as

follows:

| FUND | HOURS | RATE | TOTAL |
|---|---|---|---|
| Welfare | 255.2 | 9.6000 | $2,449.92 |
| Pension | 255.2 | 7.0000 | $1,786.40 |
| Annuity | 255.2 | 9.5025 | $2,425.04 |
| Job Training | 255.2 | 0.10 | $25.52 |
| Vacation/Sick Leave | 255.2 | 3.000 | $765.60 |
| TOTAL | | | $7,452.48 |

(Id. ¶ 13, Ex. G).

Accordingly, based on the CBA and the record provided, this Court respectfully

recommends that plaintiffs be awarded $7,452.48 for the delinquent contributions owed for this

period.

---

[6]It appears that any weeks for which the employer fails to file a report or during which
there are no hours worked will not count toward this twelve period calculation. Accordingly, the
period with the largest number of hours reported among the twelve reports prior to October 17,
2008 may be more than twelve calendar weeks before that date.

C. Other Damages Available Under the Trust Agreement and ERISA

Under the Trust Agreement, the employer is obligated to pay certain designated late

charges, including interest calculated at the rate of 18% per annum from the first day of the

month when the payment is due until the date payment is made. (Schreiber Supp. Aff. ¶ 14; Ex.

C). In addition, plaintiffs are entitled to the greater of the interest on the unpaid contributions or

liquidated damages calculated at the rate of 20% of the delinquency, plus reasonable attorneys'

fees. See 29 U.S.C. § 1132(g)(2); see also Lanzafame v. L & M Larjo Co., Inc., No. 03 CV

3640, 2006 WL 2795348, at *7 (E.D.N.Y. Sept. 26, 2006).

1) Calculation of Interest

In their application, plaintiffs seek an award of interest at 18% per year[7] accrued for the

period of delinquency calculated from the date the contributions became due[8] until the date of

this Report and Recommendation.

For the payment period ending October 17, 2008, for which no contributions have been

paid, plaintiffs seek an award of 18% interest on the unpaid principal of $7,452.48. This amount

is set forth below:

---

[7]The 18% per annum interest rate was found to be reasonable in Chicago Dist. Council of
Carpenters Pension Fund v. Industrial Erectors, Inc., 840 F. Supp. 1248, 1255 (N.D. Ill. 1993).

[8]The Court notes that although the Trust Agreement provides that interest may be
calculated from the first day of the month when each payment is due (Schreiber Aff. ¶ 16; Ex. C,
Art. IX, § 3), plaintiffs' motion requests that interest be calculated from the due date of each
payment. The Court, therefore, has calculated interest based on plaintiffs' request.

| PAYMENT PERIOD | DATE DUE | TIME PERIOD TO 7/16/09 | UNPAID PRINCIPAL | INTEREST |
|---|---|---|---|---|
| October 17, 2008 | 10/24/08 | 271 days | $7,452.48 | $1,009.81 |

In addition, because defendants were late in paying contributions to the Funds for three additional reporting periods, plaintiffs seek an award of late charges as permitted by the Trust Agreement. Thus, in addition to seeking interest for the October 17, 2008 payment period, plaintiffs also seek interest accrued to the Funds on late payments of principal as follows:

| PAYMENT PERIOD | DATE DUE | DATE PAID | TIME TO LATE PAYMENT | PAID PRINCIPAL | INTEREST |
|---|---|---|---|---|---|
| May 30, 2008 | 6/6/08 | 7/3/08 | 27 days | $1,358.52 | $18.34 |
| June 20, 2008 | 6/27/08 | 7/22/08 | 25 days | $5,660.50 | $70.76 |
| June 27, 2008 | 7/4/08 | 7/22/08 | 18 days | $6,085.94 | $54.77 |
| Total | | | | | $143.87 |

(Schreiber Aff. ¶¶ 16-18)

Having received the plaintiffs' records and calculations, the Court respectfully recommends that plaintiffs be awarded a total of $1,153.68 in interest.

2) Liquidated Damages

Plaintiffs also seek liquidated damages calculated at 20% of the principal owed to the Funds in each period in which payment was not or has still not been timely submitted -- namely, the periods ending May 30, 2008, June 20, 2008, June 27, 2008 and October 27, 2008, as follows:

| PERIOD | PRINCIPAL | LIQUIDATED DAMAGES |
|---|---|---|
| May 30, 2008 | $1358.52 | $271.70 |
| June 20, 2008 | $5,660.50 | $1,132.10 |
| June 27, 2008 | $6,085.94 | $1,217.19 |
| October 17, 2008 | $7,452.48 | $1,490.50 |
| Total | | $4,111.49 |

Having reviewed plaintiffs' counsel's Affirmation and Supplemental Affirmation, along with the supporting documentation, plaintiffs' calculation of liquidated damages appears to be accurate, and this Court respectfully recommends that plaintiffs be awarded $4,111.49 in liquidated damages for the periods of delinquency.

3) Attorneys' Fees

ERISA provides that when an employee benefit fund prevails in a legal action, the defendant is liable for reasonable legal costs. 29 U.S.C. § 1132(g)(2)(D). The Trust Agreement in this case further establishes that the employer is liable for the benefit plan's legal costs once the employer is in default. (Schreiber Aff. Ex. C, Art. IX, § 1(f)). Plaintiffs request $5,212.06 in legal fees. (Schreiber Aff. ¶ 37; Schreiber Supp. Aff. ¶ 17).

a) Reasonable Fees

When assessing whether claimed legal costs are reasonable, the Court determines the "presumptively reasonable fee" for an attorney's services by looking to what a reasonable client would be willing to pay. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 183-84 (2d Cir. 2008). To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed. Id. In Arbor

Hill, the Second Circuit adopted the following factors, inter alia, to guide the court's inquiry as to what constitutes the reasonable hourly rate:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases . . . .

Id. at 187 n.3 (citing Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)). A number of courts within the Second Circuit have applied these factors when awarding attorneys' fees. See Lochren v. County of Suffolk, No. 01 CV 3925, 2008 WL 2039458, at *2 (E.D.N.Y. May 9, 2008); see also Cruz v. Henry Modell & Co., Inc., No. 05 CV 1450, 2008 WL 905351, at *3 (E.D.N.Y. Mar. 31, 2008).

Courts are also instructed to balance:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively . . ., the timing demands of the case, whether the attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether the attorney might have initially acted pro bono . . ., and other returns (such as reputation, etc.) the attorney might expect from the representation.

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 184; see also Heng Chan v. Sung Yue Tang Corp., No. 03 CV 6048, 2007 WL 1373118, at *2 (S.D.N.Y. May 8, 2007) (applying some of these Arbor Hill factors).

In awarding attorneys' fees in this case, the Court is guided principally by the fact that default actions are relatively simple legal matters, also taking into account the attorneys' degree of skill and the Court's own experience dealing with similar claims.

Plaintiffs here seek attorneys' fees and costs in the amount of $5,212.06, allegedly representing services performed by counsel in connection with plaintiffs' efforts to obtain this judgment. In accordance with <u>N.Y. State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1148 (2d Cir. 1983), plaintiffs' counsel has submitted the Affirmation in Support of Default Judgement of Avram Schreiber, Esq., dated October 6, 2008, and the Supplemental Affirmation in Support of Plaintiffs' Claim for Damages, dated February 5, 2008, as well as contemporaneous billing records setting forth the dates and amount of time during which services were rendered, along with the name of the attorney and a description of services performed. (Schreiber Aff. ¶ 37; Ex. J; Schreiber Supp. Aff. ¶ 16; Ex. D).

Specifically, Mr. Schreiber's affirmation indicates that three attorneys and one paralegal performed services in connection with this matter. (Schreiber Aff. ¶ 47). The hourly rates charged by Schreiber's office are as follows: Avram H. Schreiber, a partner, charged $300.00 per hour for legal services performed; Kimberly Oberhauser, an associate admitted to practice in 2008, charged $225.00 per hour for legal services performed and $80.00 per hour for administrative tasks. In addition, Woomee Lee, an associate admitted to practice in 2004, charged $80.00 per hour for administrative tasks associated with the case, and Denise Dees, a paralegal, charged $80.00 per hour for paralegal and administrative tasks. (Id.)

Based on this Court's knowledge of the rates generally charged for this type of work in connection with an ERISA default, the Court finds that the $300.00 hourly rate charged for Mr.

Schreiber's work is in keeping with the billing rates of similarly experienced attorneys in this

district working on comparable matters. See King v. STL Consulting, LLC, No. 05 CV 2719,

2006 WL 3335115, at *7 (E.D.N.Y. Oct. 3, 2006) (awarding attorneys' fees for Mr. Schreiber's

time in a default ERISA case at the rate of $275.00 per hour). It is therefore respectfully

recommended that the requested rate of $300.00 per hour for Mr. Schreiber's time be approved.

Similarly, the rate charged by Ms. Oberhauser, Ms. Lee and Ms. Dees for their

administrative and paralegal work on this case is reasonable and appropriate. Thus, the Court

recommends that the requested rate of $80.00 be approved. See La Barbera v. Interstate Dev.

Group, Inc., No. 07 CV 2052, 2008 WL 858985, at *8 (E.D.N.Y. Mar. 31, 2008) (approving an

$80.00 per hour rate for paralegal work in an ERISA default action); Morin v. Nu-Way

Plastering, Inc., No. 03 CV 405, 2005 WL 3470371, at *2 (E.D.N.Y. Dec. 19, 2005) (awarding

$75.00 per hour for paralegals).

However, the rate of $225.00 billed by Kimberly Oberhauser for her legal services should

be adjusted. Oberhauser is a new attorney, having been admitted to the bar less than a year ago.

(Schreiber Aff. ¶ 47). Less experienced attorneys in simple actions such as this are routinely

compensated at a lower rate. See, e.g., La Barbera v. United Ornamentals, Inc., No. 08 CV 2573,

2009 WL 187574, at *17 (E.D.N.Y. Jan. 26, 2009) (awarding Ms. Oberhauser $175.00 per hour

for legal work associated with an ERISA action), King v. STL Consulting, LLC, 2006 WL

3335115, at *7 (E.D.N.Y. Oct. 3, 2006) (awarding $100.00 per hour for a recently admitted

associate in an ERISA action); La Barbera v. J.E.T. Res., Inc., 396 F. Supp. 2d 346, 352-53

(E.D.N.Y. Nov. 4, 2005) (awarding the rate of $150.00 per hour for associates in an ERISA

action). Accordingly, reflecting both the relative simplicity of the present action and the level of

experience of the associate, it is respectfully recommended that Ms. Oberhauser be compensated at the rate of $175.00 per hour.

With respect to the number of hours expended in this action, it appears that during the period from the commencement of the action on September 8, 2008 to October 6, 2008, Mr. Schreiber spent 0.7 hours on legal services associated with the case, and Ms. Oberhauser spent 7.4 hours. Additionally, during this same time, the paralegal spent 1.7 hours on administrative services related to this case, and Ms. Lee and Ms. Oberhauser billed 0.4 hours and 4.1 hours, respectively, for administrative tasks billed at the same rate as the paralegal.

For the period October 7, 2008 through February 5, 2008, Mr. Schreiber spent 0.9 additional hours and Ms. Oberhauser spent 8.0 additional hours on legal services associated with this case. Ms. Dees spent an additional 0.9 hours and Ms. Oberhauser spent an additional 2.5 hours on administrative services during this time. The calculations are as follows:

|  | HOURS TO 7/31 | HOURS 7/31 - 9/15 | RATE | TOTAL |
|---|---|---|---|---|
| Schreiber | 0.7 | 0.9 | $300.00 | $480.00 |
| Oberhauser | 7.4 | 8.0 | $175.00 | $2,695.00 |
| Paralegal Work | 6.2 | 3.4 | $80.00 | $768.00 |
| Total Hours | 14.3 | 12.3 |  | $3,943.00 |

Based on a review of the description of the services rendered, this Court finds the time reflected in plaintiffs' request for attorneys' fees is reasonable and appropriate under the circumstances. When the total number of hours spent is multiplied by the adjusted rates recommended by this Court, the total amount of attorneys' fees equals $3,943.00.

Plaintiffs also seek an award of costs incurred in litigating this matter, including court

costs, totaling $499.06. (Schreiber Aff. Ex. J; Schreiber Supp. Aff. Ex. D). Having reviewed the

costs requested, the Court finds them to be reasonable as well.[9]

Accordingly, the Court respectfully recommends that plaintiffs be awarded attorneys' fees

and costs in the amount of $4,442.06, reflecting the application of the adjusted recommended

hourly rates discussed above.

## D. Permanent Injunction

In addition to monetary damages, plaintiffs also seek a permanent injunction to ensure

that defendant complies with the CBA, the Trust Agreement, and the requirements of ERISA in

the future. (Schreiber Aff. ¶¶ 50-53). A permanent injunction is an available remedy under

Section 1132(g)(2)(E) of ERISA, which states that in a successful action to enforce the

requirements of ERISA, an ERISA plan may recover "such other legal or equitable relief as the

court deems appropriate." 29 U.S.C. § 1132(g)(2)(E); see Beck v. Levering, 947 F.2d 639, 641

(2d Cir. 1991) (per curiam), cert. denied, 504 U.S. 909 (1992); Lanzafame v. L & M Larjo Co.,

Inc., 2006 WL 2795348, at *9 (citing cases); King v. Nelco Indus., Inc., No. 96 CV 4177, 1996

WL 629564, at *1 (E.D.N.Y. Oct. 23, 1996). In a case such as this, where defendant is in

default, and where the applicable statute provides for injunctive relief as a possible remedy, the

court may issue an injunction if plaintiffs meet the requirements for obtaining a permanent

---

[9]In a document labeled "Statement for Judgement," plaintiffs seek an award of $435.00 in court costs incurred in this case. This document was attached to the original Schreiber Affirmation in front of Exhibit A but was not labeled as an exhibit. Since these same costs are already included in the invoice for legal services submitted as part of the Schreiber Affirmation, and are included in the request for costs discussed above, they should not be awarded a second time as an independent expense. (See Schreiber Aff. Ex. J).

Jul. 6, 2006). To make the showing that an injunction is necessary, plaintiffs must also demonstrate the absence of an adequate remedy at law. See La Barbera v. David Liepper & Sons, Inc., 2006 WL 2423420, at *6.

Courts have held injunctive relief to be an appropriate remedy in ERISA disputes where the defendant "intends to frustrate any judgment . . . or show 'contempt for the judicial process.'" King v. Nelco Indus., Inc. 1996 WL 629564, at *1 (citing Rudd v. Advance Bedding Corp., No. 95 CV 2099, 1995 WL 548723, at *2 (E.D.N.Y. Sept. 8, 1995) and quoting Laborers Fringe Benefit Funds Detroit & Vicinity v. Northwestern Concrete & Constr., Inc., 640 F.2d 1350, 1353 (6th Cir. 1981)). In this case, although defendant has defaulted and has failed to make payment of required contributions, in the time since plaintiff moved for default, defendant has made at least some attempt to fulfill its obligations under the CBA. Specifically, defendant has submitted remittance reports for the periods of the weeks ending July 4, 2008, July 18, 2008 and, with one exception,[10] all weeks ending between July 18, 2008 and December 31, 2008. (Schreiber Supp. Aff. ¶ 6-8; Ex. A; Ex. B). Such compliance on the part of the defendant, while imperfect, indicates that defendant does not intend to "frustrate any judgment . . . or show 'contempt for the judicial process.'" King v. Nelco Indus., Inc. 1996 WL 629564, at *1. Further, it suggests that

---

[10]Defendant has still failed to submit remittance reports for the period of the week ending October 17, 2008.

18

the remedy at law under ERISA would not be inadequate in this case. As such, a permanent injunction is not an appropriate remedy at this time.

Additionally, the CBA on which the plaintiffs base their claims apparently expired on June 30, 2009. (Schreiber Aff. Ex. C). Plaintiffs' submissions, including their supplemental affirmation of February 9, 2009, make no mention of any extension of the CBA or of required fringe benefit contributions relating to any period after June 30, 2009. Since the CBA has apparently already expired, injunctive relief is not an appropriate remedy. La Barbera et. al v. United Ornamentals, Inc., 2009 WL 187574, at *19 (denying injunctive relief on the grounds that the CBA in question had expired prior to the resolution of the case). Accordingly, this Court respectfully recommends that plaintiffs' request for a permanent injunction be denied.

## CONCLUSION

Accordingly, it is respectfully recommended that plaintiffs be awarded damages in the amount of $17,159.71, representing $7,452.48 owed in principal contributions; $1,153.68 in interest; $4,111.49 in liquidated damages; and $4,442.06 in attorneys' fees and costs. In addition, it is respectfully recommended that plaintiffs' request for a permanent injunction be denied at this time.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
        July 16, 2009

CHERYL L. POLLAK
United States Magistrate Judge

20